UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| COREY LAWSON, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 3:17-CV-720 JD |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

On September 19, 2017, Plaintiff Corey Lawson filed a complaint in this Court seeking review of the final decision of the Defendant Commissioner of Social Security denying his application for social security disability benefits [DE 1]. The matter is fully briefed and ripe for decision [DE 21-24]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

## I. FACTS

Lawson filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on January 1, 2014,[1] alleging an onset date of May 1, 2013, which was later amended to February 10, 2013—the day that he sustained a work-related back injury. To be entitled to DIB, Lawson must establish disability on or before September 30, 2018. Lawson

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq.*, while the SSI regulations are set forth at 20 C.F.R. § 416.901 *et seq.* Because the definition of disability and the applicable five-step process of evaluation are identical for both DIB and SSI in all respects relevant to this case, reference will only be made to the regulations applicable to DIB for clarity.

contends that he is unable to work primarily because he suffers from severe back pain, diabetes, HIV, and depression.

While Lawson began experiencing moodiness and sadness in 2012, which resulted in his being prescribed Lexapro, he noticed increased depression in August 2013 after being diagnosed with degenerative disk disease. R. at 398, 410-13. On October 28, 2013, Lawson received a medical diagnosis of depression. By March 2014, he was diagnosed as having major depressive disorder (recurrent, moderate severity) and an unspecified anxiety disorder. R. at 385, 435. Continuing into 2016, Lawson complained of experiencing difficulties with his depression and expressed that he was sleeping more often and finding less enjoyment in life. R. at 892.

As for Lawson's back pain, an x-ray taken shortly after his work-related incident demonstrated advanced moderate to severe intervertebral disc space narrowing at L5-S1, with anterior osteophytic spur formation and facet joint sclerosis, particularly at L5-S1 and secondarily at L4-5. R. at 355. In August 2015, another x-ray demonstrated mild to moderate L5-S1 degenerative disc disease. R. at 1054. As of 2016, Lawson continued to complain of chronic back pain despite taking pain medication, undergoing spinal injections, and participating in physical therapy. R. at 813-52, 1019-67.

Lawson's applications were denied initially in April 2014, and on reconsideration in August 2014. On April 12, 2016, Lawson and a vocational expert ("VE") testified during a hearing held before Administrative Law Judge Daniel Mages ("ALJ"). Lawson explained that his daily activities varied based on the level of his back pain, and that when it rains he is typically bedridden. Lawson testified that he only cooks simple microwavable meals because he cannot stand for any longer. For Lawson, shopping requires too much walking, showering requires too much standing, and vacuuming requires too much pushing. The last time Lawson tried mowing

the lawn, he only lasted for ten minutes. He can no longer play sports. When his back hurts, he needs to stretch or lay down for ten to thirty minutes. Lawson's depression causes him to stay in bed, and he doesn't think his prescription for Cymbalta is helping.

The VE's testimony was based strictly on the (relevant) hypothetical posed to him, which offered an assigned residual functional capacity ("RFC")[2] of sedentary work, limited by occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, no work around dangerous moving machinery or unprotected heights, frequent fingering, handling, and feeling bilaterally, and involving only simple, routine tasks with the ability to attend, concentrate, and persist for two hours at a time. Per the VE, with this RFC Lawson would not be able to perform his past work, but he could perform unskilled work as a call out operator, order clerk, and telephone quotation clerk.

The ALJ issued a decision on July 16, 2016, denying Lawson disability benefits and concluding that Lawson was not disabled under the Social Security Act because he was able to perform other work in the national economy. The Appeals Council then denied Lawson's request for review which made the ALJ's decision the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Lawson seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th

---

[2] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez,* 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability and supplemental insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

4

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

> 1. Whether the claimant is currently engaged in substantial gainful activity;
>
> 2. Whether the claimant has a medically severe impairment;
>
> 3. Whether the claimant's impairment meets or equals one listed in the regulations;
>
> 4. Whether the claimant can still perform relevant past work; and
>
> 5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must assess the claimant's RFC, which, in turn, is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Lawson offers multiple arguments in support of reversal. He argues that the ALJ erred in concluding that his anxiety and depression were non-severe. He also claims the ALJ erred in failing to adequately address why he did not meet particular listings at step three. He further

5

claims that the ALJ erred in relying on the testimony of the VE because it conflicted with the Dictionary of Occupational Titles in terms of the level of reasoning (and logical or scientific thinking) required for certain work having a General Educational Development Reasoning Level of three. However, the Court need only address one of Lawson's arguments—that is, in determining Lawson's RFC, the ALJ failed to account for his limitations in performing activities of daily living and in maintaining concentration, persistence, and pace. That error requires reversal regardless of the merit of any additional arguments. In addition, Lawson does not seek an outright award of benefits, nor would any of his remaining arguments support such an award. Thus, the Court need not reach the remaining arguments, though the parties are free to consider them on remand.

## IV. ANALYSIS

### A. Residual Functional Capacity

In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, including testimony by the claimant, as well as evidence regarding limitations that are not severe. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski*, 245 F.3d at 888. Nevertheless, an ALJ need not provide a written evaluation of every piece of testimony and evidence. *Golembiewski*, 322 F.3d at 917. Instead, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

In this case, the Court agrees with Lawson's counsel that in assessing the RFC, the ALJ failed to consider evidence favoring Lawson and went a step further by mischaracterizing

evidence that would support Lawson's being further limited. For instance, several times throughout the ALJ's opinion, the ALJ indicated that Lawson's activities of daily living (as reported by Lawson and his mother in "function reports") demonstrate that Lawson is not as functionally limited as he claims. In making this assessment, the ALJ repeatedly relied on the fact that Lawson attends to his personal care, manages his medications, engages in pet care, and "does household tasks." The ALJ also noted that Lawson goes out alone, pays bills, watches television, and talks to his roommate and mother. The ALJ explained that Lawson is also able to pay attention and finish what he starts. Further, in assessing Lawson's ability to successfully perform daily activities, the ALJ relied on a mental status exam which the ALJ characterized as demonstrating that Lawson's "attention and concentration were adequate."

Unfortunately, the very same documents relied on by the ALJ paint quite another picture of Lawson's abilities when they are considered in their entirety. In this case, the ALJ never mentioned that these documents actually reflect that Lawson is unable to clean the house or perform yard work because lifting, pushing, and pulling are too painful. Lawson only does laundry because his roommate makes him, and even then, a single load of laundry takes almost two hours to complete. Per the functional reports, Lawson isolates himself at home most of the time because he is too depressed to do anything, whereas he used to be the "life of the event." When Lawson does leave the house, he cannot sit very long in the car due to pain. It was also reported that Lawson is only able to pay attention for one hour and is unable to finish what he starts. Moreover, the mental status examiner indicated a belief that Lawson was being truthful when he reported being unable to do much of anything physical due to his back pain and having a "poor" ability to mentally focus and concentrate.

The ALJ's exclusion of this line of significant evidence supporting Lawson's claim for disability fails to demonstrate that the ALJ considered the full extent of Lawson's problems and their limiting effects. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). While the Court realizes that an ALJ need not discuss every piece of evidence in the record in rendering his decision, the ALJ cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *See id.* Here, the ALJ improperly mischaracterized Lawson's daily activities by not acknowledging reports of what Lawson is unable to do and the limited means by which he performs some activities. *See Craft*, 539 F.3d at 680 (noting that when an ALJ considers a claimant's activities, the ALJ should consider not only what the claimant does, but also how the claimant goes about performing those activities and what effect the activities have on the claimant). On remand, it should also be remembered that "a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Without acknowledging the differences between the demands of such activities and those of a full-time job (as occurred here), an ALJ is not entitled to use successful performance of life activities as a basis to determine that a claimant's claims of a disabling condition are not credible. *Ghiselli v. Colvin*, 837 F.3d 771, 777-78 (7th Cir. 2016) ("the critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer") (citation omitted).

In addition, the ALJ's repeated reliance on the state agents' assessments, who opined that Lawson could perform work at the light exertional level, does not provide the necessary logical

bridge from the evidence to the conclusions reached by the ALJ. First, the ALJ characterized the state agent opinions as being "consistent with . . . the claimant's activities of daily living." R. at 13. However, as discussed, the ALJ overstated the extent of Lawson's daily activities by not acknowledging evidence supporting further limitations. Second, the state agent opinions were rendered in April and August of 2014. Thus, the reviewing state agents did not have access to later treatment notes indicating that Lawson continued to complain of back pain, for which Lawson sought "definitive relief" by undergoing further spinal injections and physical therapy. Nor did the state agents have an opportunity to consider medical records from 2016, which indicated that Lawson was having increased problems with his depression, for which Lawson intended to followup on with his primary care physician.[3] Despite this additional evidence, it does not appear that the ALJ had an RFC assessment conducted by any medical professional to determine whether Lawson's RFC might change. *See Staggs v. Astrue*, 781 F.Supp.2d 790, 794–96 (S.D. Ind. 2011) (finding that the medical record omitted from review provided "significant substantive evidence" regarding the claimant's medical impairments and that any medical opinion rendered without taking this record into consideration was "incomplete and ineffective.").

It should also be noted that the ALJ's mischaracterization of the record, including Lawson's reported daily activities, served as a basis to broadly discredit Lawson's testimony. The ALJ's failing to accurately consider all the relevant evidence and failing to rely on updated medical opinions calls into question the soundness of the ALJ's reasoning for discounting

---

[3] Nor did the ALJ bother to address the fact that around this same time Lawson testified consistently with these records when Lawson stated that the Cymbalta was not helping and that he intended to have his doctor re-evaluate his treatment plan for his depression. R. at 68. Instead, the ALJ contrarily concluded that Lawson "appears to be adequately maintained on his psychotropic medication." R. at 15, 21.

Lawson's testimony. Thus, on remand, the ALJ must correct these errors in assessing Lawson's credibility and formulating Lawson's RFC. The ALJ's error in this respect requires remand because the ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," based upon all of the relevant evidence in the record, even as to limitations that are not severe. SSR 96–8p.

### B. Step Five

Ultimately, without the RFC determination being supported by substantial evidence, the Court is unable to rely on the ALJ's determination that Lawson can perform other work (step five). More accurately stated, in deciding what work Lawson can perform, the ALJ relied on the VE's testimony, which, in turn, relied on the ALJ's hypothetical question that incorporated the inadequately supported RFC determination.

The law requires the ALJ to incorporate into the hypotheticals those impairments and limitations that the ALJ accepts as credible. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Here, the ALJ's insufficiently supported RFC findings led the ALJ to ask hypotheticals of the VE which omitted Lawson's claimed (and potentially credible) limitations caused by his chronic back pain and recurrent major depressive disorder. Ultimately, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Lawson can perform.[4]

---

[4] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)). This exception does not apply here, since the VE never indicated having reviewed Lawson's medical records, nor did he indicate in his responses having relied on those records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical person posed by the ALJ,

*See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps four and five because a flawed RFC typically skews questions posed to the VE); SSR 96-8p. Thus, until the hypotheticals presented to the VE include the functional limits that the ALJ accepts as credible, and the ALJ adequately explains the claimant's actual limitations and resulting RFC based on the relevant medical evidence, 20 C.F.R. §§ 404.1545, 404.1546(c), step five cannot be affirmed in this appeal. *See Young,* 362 F.3d at 1003-05.

## V.  CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED:  January 22, 2019

/s/ JON E. DEGUILIO
Judge
United States District Court

---

and not on the record itself or the limitations of the claimant himself. *Id*. (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).